421 S.E.2d 680

**In re Petition for the ADOPTION OF Ashley Nicole MULLINS by Robert FARLEY and Vivian June Farley.**

No. 20483.

Supreme Court of Appeals of West Virginia.

Submitted April 28, 1992.

Decided June 25, 1992.

Petition for Rehearing and Reargument Denied Sept. 29, 1992.

Joan G. Hill, Crandall & Pyles, Charleston, for Robert and Vivian Farley.

James C. Stucky, Charleston, for William Mullins, Jr.

Robert T. Noone, Logan, Guardian Ad Litem.

PER CURIAM:

Robert and Vivian Farley appeal an order of the Circuit Court of Logan County that denied their petition to adopt their granddaughter, Ashley Nicole Mullins, based on a finding that her natural father, William Mullins, Jr., did not intend to abandon his parental rights. Because we agree with the circuit court that evidence of Mr. Mullins' alleged abandonment was not clear and convincing, we affirm the decision of the circuit court.

Ashley Nicole Mullins was born out of wedlock on November 27, 1986, to Carolyn Denise Farley (age 15), the daughter of Mr. and Mrs. Robert Farley. Mr. Mullins (age 18), acknowledged that he was Ashley's natural father. Since her birth, Ashley has lived with Mr. and Mrs. Farley, her maternal grandparents. Although Ashley's mother also lived with her parents until February 1991, Mr. and Mrs. Farley have supported, nurtured and cared for Ashley as if she were their child. Ms. Farley, who now lives with her husband (who is not Ashley's father), consents to Ashley's adoption by her parents.

Shortly after Ashley's birth, Mr. Mullins acknowledged that he was Ashley's father and visited her several times and provided her with six cans of formula, a sleeper and a jacket. Mr. Mullins claims that he gave Ashley at least two cases of formula, several sleepers, diapers and other clothes. From January 1987 until Mr. and Mrs. Farley sought to adopt Ashley on September 11, 1990, Mr. Mullins had almost no contact with Ashley. Mr. Mullins alleges that during this period the numerous phone calls he and his family made to Ms. Farley concerning his daughter were rebuffed and his presents of money, clothes and toys were rejected and given away. Mr. and Mrs. Farley acknowledge that they discouraged the relationship between their daughter, Carolyn, and Mr. Mullins but insist that Mr. Mullins was able to visit Ashley. Mr. and Mrs. Farley maintain that between January 1987 and September 1990, the only contact between Mr. Mullins and Ashley was one phone call from Mr. Mullins asking about Ashley's health and that the only presents from Mr. Mullins were a stuffed animal and an Easter dress. After Mr. and Mrs. Farley filed their petition to adopt Ashley, Ashley received some cards and presents from Mr. Mullins consisting of $35 and an Easter basket.

After Mr. Mullins refused to consent to Ashley's adoption, Mr. and Mrs. Farley petitioned the circuit court to adopt Ashley, alleging that Mr. Mullins had abandoned Ashley. At a hearing, although Mr. Mullins acknowledged his limited relationship with his daughter, Mr. Mullins maintained that his efforts to visit or support his daughter were rejected and that he did not seek legal assistance because of his youth and inexperience. Based on Mr. Mullins' testimony, the circuit court found that Mr. Mullins had never intended to abandon his child or to forego his parental rights. Because Mr. Mullins would not consent to the adoption, the circuit court awarded custody to Mr. and Mrs. Farley but granted visitation to Mr. Mullins and ordered him to pay child support.[1] On appeal to this Court, Mr. and Mrs. Farley assert that the circuit court erred in failing to find that Mr. Mullins had abandoned his daughter and should have terminated Mr. Mullins' parental rights by granting their petition for adoption.

I

■ *W. Va. Code*, 48–4–3(a) [1984] provides, in pertinent part:

The mother and legal father or determined father shall consent to the adoption by a writing acknowledged as in the case of deeds, unless the court orders, after hearing, that the parental rights of such person are terminated, abandoned or permanently relinquished, or that the person is under disability solely because of age.

Because Mr. Mullins has not consented to the adoption of his daughter by Mr. and Mrs. Farley, the only way the circuit court can grant the adoption is by proof that Mr. Mullins abandoned or permanently relinquished his parental rights to Ashley.

■ "The standard of proof required to support a court order limiting or terminating parental rights to custody of minor children is clear, cogent and convincing proof." Syllabus Point 6, *In re Willis*, 157

---

1. The parties were ordered to submit financial information to the Child Advocate's Office to determine the amount of support required by the child support guidelines. The issue of support is not before this Court but during oral argument Mr. Mullins' lawyer maintained that Mr. Mullins began in July 1991 to pay $135 per month in child support but that no back support had been paid.

774

W.Va. 225, 207 S.E.2d 129 (1973); *State v. Carl B.*, 171 W.Va. 774, 301 S.E.2d 864 (1983); Syllabus Point 1, *Matter of Adoption of Schoffstall,* 179 W.Va. 350, 368 S.E.2d 720 (1988).

 In *Schoffstall*, we noted that within the purview of the adoption laws the most frequently approved definition of abandonment is that which "imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. (Footnote omitted)" *Schoffstall, id.*, 179 W.Va. at 352, 368 S.E.2d at 722. *In re Harris,* 160 W.Va. 422, 236 S.E.2d 426 (1977), we gave a broad outline of what constitutes abandonment.

> Where a father abandons his children, provides no support and maintenance, does not visit the children, and does not in any other reasonable way, given his position in life and the opportunities for the exercise of his parental rights, exercise the authority or undertake the responsibilities of a parent ... we would not be concerned with the father's protectable interest because he would have waived such interest by abandonment.

*Harris id.*, 160 W.Va. at 428, 236 S.E.2d at 430.

In Syllabus Point 2, *Schoffstall*, we noted that:

> Under *W.Va.Code*, 48-4-3(a) [1984], failure to pay child support alone does not constitute abandonment of the natural parents' rights in an adoption proceeding.

 In the present case, although Mr. Mullins provided almost no support for his child and did not visit her for almost 4 years, the record indicates that Mr. and Mrs. Farley discouraged Mr. Mullins from contacting their daughter, the mother of Mr. Mullins' child. Given the situation of an underage, unwed mother living with her parents and of the parents' discouragement of a relationship between their daughter and her child's father, a youthful father could be discouraged from undertaking his parental responsibilities. In addition, the record indicates that Mr. Mullins' attempts to develop a relationship with his daughter were substantially frustrated by the Far-

leys. We also note that the circuit court found Mr. Mullins' testimony that he did not intend to abandon his child to be convincing. Furthermore, the father makes no challenge to the grandparents' right to continued custody of the child and obviously is in a weak position to do so. Under these circumstances, Ashley can enjoy the continued stability of her life · with her grandparents, but can have the additional benefit of a continued relationship with her natural father as well as an appropriate financial contribution to her support and well-being.

Given these facts, we agree with the circuit court's finding that the record does not contain clear, cogent and convincing proof that Mr. Mullins intended to abandon his daughter.

For the above stated reasons, the decision of the Circuit Court of Logan County is affirmed.

Affirmed.